*In re* MARRIAGE OF ROSALIND MARIE CHAPMAN, Petitioner-Appellant, and RICHARD EUGENE CHAPMAN, Respondent-Appellee.

Third District   No. 3—96—0376

Opinion filed December 4, 1996.

378

Stewart R. Winstein and David L. Cunningham, both of Winstein, Kavensky & Wallace, of Rock Island, for appellant.

Gregory G. Chickris, of Chickris & Phares, of East Moline, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The petitioner, Rosalind Chapman, n/k/a Rosalind Vandersnick, appeals from a judgment of dissolution of marriage. The judgment dissolved her marriage to the respondent, Richard Chapman, distributed the parties' property, ordered Richard to continue her health insurance for a period of two years and awarded her no maintenance.

On appeal, Rosalind argues that the trial court abused its discretion: (1) when it failed to award maintenance, considering her failing health and inability to work; and (2) when it failed to order Richard to provide health insurance for longer than two years and pay her uncovered medical expenses.

After carefully reviewing the record on appeal, we reverse the trial court's determination. For reasons that follow, we remand the case to the circuit court of Henry County for further proceedings consistent with this opinion.

## FACTS

Rosalind and Richard were married on August 20, 1988, and separated on August 30, 1992. No children were born during the marriage. Rosalind filed her petition for dissolution of marriage on October 7, 1992. At that time, she was 35 years old, and Richard was 39 years old. On February 19, 1993, the trial court entered an order requiring Richard to pay Rosalind $400 per month in temporary maintenance.

On August 24, 1994, after a hearing, an order was entered finding grounds for the dissolution of the marriage. A hearing on the remaining contested matters was held on January 23, 1995. Richard's financial affidavit said he worked for John Deere and earned about $3,400 gross per month. However, he testified that, just prior to the hearing, he had changed jobs at John Deere to obtain greater job security. He anticipated that his gross monthly income would be about $2,586 in the new job. Evidence was presented that it would cost him $187.68 per month to keep Rosalind covered under his group health insurance after the dissolution of marriage was final.

Rosalind testified that she was diagnosed with myotonic dystrophy in September 1992. Evidence was presented that it is a hereditary disease. Her deceased father had the disease, as well as several other family members. She stated that her symptoms include difficulty in walking, balance problems and weakness in her hands, which makes it difficult to write. She also needs a lot of sleep. Rosalind testified that it is difficult for her to do daily tasks such as brushing her teeth, using a blow dryer on her hair, turning faucets on and off, opening and closing doors and going up and down steps. She said that she cannot use a mop or run a vacuum cleaner.

Rosalind previously worked as a teller at Farmers National Bank for almost 18 years. Her gross pay was $1,024.97 per month, and her net pay was $718.80 per month. She voluntarily left her employment on December 31, 1994, because she was unable to adequately perform her job responsibilities. Rosalind stated that the stress and frustration associated with the job were too much for her to continue. She testified that she had applied for social security disability but was not yet receiving any benefits. In her financial affidavit, she claimed that her monthly living expenses were $1,394.50.

Rosalind's mother, Rosella Vandersnick, testified that Rosalind

moved in with her in May 1994. She said Rosalind has balance problems and problems with choking when she tries to take medication. Rosella testified that Rosalind also is often very tired and has limited ability to perform tasks, such as buttoning clothing, because of weakness in her hands. Rosella testified that she is 60 years old and works part time. She does the housecleaning and laundry and also helps Rosalind with the many tasks that Rosalind is unable to accomplish. Rosella stated that Rosalind pays rent to help pay the bills.

Marsha Flemming, an operations manager at Farmers National Bank, testified that she was one of Rosalind's supervisors. She stated that Rosalind's condition deteriorated during the last six months Rosalind worked at the bank. Rosalind had difficulty walking because of balance problems and had difficulty writing legibly.

Janet Cady, the head teller at the bank, testified that Rosalind had been an excellent worker but became less and less efficient because of her physical problems. Cady stated that Rosalind had problems with vision and needed help lifting heavy items such as bags of coins. Cady testified that Rosalind's speech had become slurred and it was hard for her to speak clearly to bank customers. Rosalind had trouble concentrating and sometimes needed help to finish her transactions or to balance her cash drawer at the end of the day. Also, Cady said it was hard for Rosalind to write clearly enough so that co-workers could read her handwriting. Cady testified that it was extremely difficult for Rosalind to perform her job the last two weeks she was employed at the bank.

Cady specifically stated that, because of all the difficulties Rosalind was having, she was not able to continue her employment at the bank. Flemming testified that there was no part-time position available for Rosalind and that all of the jobs at the bank require writing and verbal communication skills.

At the hearing, several exhibits were admitted into evidence. These included letters from two doctors concerning Rosalind's condition, as well as the evidence deposition of Dr. Ionesescu. The record indicates that all of the exhibits substantiated the fact that Rosalind had been diagnosed as having myotonic dystrophy. However, we note that none of the exhibits have been included in the record on appeal.

After the hearing, the trial court took the matter under advisement. Thereafter, the parties submitted written arguments. On May 12, 1995, the parties submitted a stipulation that Rosalind was found eligible for social security disability benefits and would begin receiving $636 per month on July 3, 1995.

On August 4, 1995, the trial court entered a judgment of dissolu-

tion resolving all issues. In the judgment, Rosalind was given the right to resume using her maiden name of Vandersnick. Also, the parties were awarded the personal property in their possession. Each party was also awarded ownership of a motor vehicle. Rosalind was awarded all rights to her 401(k) plan at the bank, and Richard was awarded his 401(k) retirement plan at John Deere. Richard was ordered to pay two outstanding debts, as well as $2,238.15 of Rosalind's attorney fees. Richard was additionally awarded five acres of real estate, which was found to be his nonmarital property.

The judgment ordered Richard to maintain health insurance coverage for Rosalind for the next two years. The judgment further stated that Rosalind would be responsible for all of her medical expenses not covered by insurance. The judgment provided that Rosalind was permanently barred from receiving maintenance from Richard. The trial court said the decision not to award maintenance was based upon its consideration of "the length of the marriage and separation; the extent of rehabilitative maintenance paid and the award of $636.00 per month of Social Security Benefits."

Rosalind filed a motion to reconsider, contesting the trial court's denial of maintenance and failure to make adequate provision for health insurance and payment of medical expenses. The trial court denied the motion to reconsider. Thereafter, Rosalind filed a timely notice of appeal.

## ANALYSIS

### I. Omissions from the Record

■ We initially recognize that none of the exhibits admitted at the hearing, including the evidence from Rosalind's doctors, are contained in the record on appeal. Copies of these exhibits have been attached to the parties' briefs. However, we note that all matters reviewed on appeal must be made part of the official court record. 155 Ill. 2d R. 321; *Dopp v. Village of Northbrook*, 257 Ill. App. 3d 820, 824, 630 N.E.2d 84, 86 (1993). Accordingly, a copy of an item attached to a brief cannot be considered by this court. See *Dopp*, 257 Ill. App. 3d at 824, 630 N.E.2d at 86.

It is well established that the appellant has the burden of presenting a reviewing court with an adequate record concerning the claimed error. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 546-47, 662 N.E.2d 1248, 1258 (1996). However, an incomplete record does not automatically preclude a reviewing court from determining whether the trial court's findings or rulings are correct where that determination can be made from the incomplete record presented on appeal. *Dubey v. Abam Building Corp.*, 266 Ill. App. 3d 44, 46, 639

N.E.2d 215, 217 (1994). After reading the record on appeal, we conclude that it is adequate for purposes of our review.

## II. Maintenance

■ A trial court's determination regarding maintenance will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Uehlein*, 265 Ill. App. 3d 1080, 1089, 638 N.E.2d 706, 714 (1994). An abuse of discretion occurs when no reasonable person would take the view adopted by the trial court. *In re Marriage of Werries*, 247 Ill. App. 3d 639, 652, 616 N.E.2d 1379, 1390 (1993). In deciding whether to award maintenance and the amount of maintenance, the trial court should review and consider the relevant statutory factors, including:

"(1) the income and property of each party, including marital property apportioned *** to the party seeking maintenance;
(2) the needs of each party;
(3) the present and future earning capacity of each party;

\* \* \*

(6) the standard of living established during the marriage;
(7) the duration of the marriage;
(8) the age and the physical and emotional condition of both parties." 750 ILCS 5/504(a) (West 1994).

No one statutory factor is dispositive of the determination whether maintenance should be granted or denied. *In re Marriage of Harlow*, 251 Ill. App. 3d 152, 157, 621 N.E.2d 929, 934 (1993). However, a trial court is *required* to consider the parties' health and economic circumstances *as they exist when the court rules on the maintenance award*. *In re Marriage of Brooks*, 138 Ill. App. 3d 252, 265, 486 N.E.2d 267, 275-76 (1985). It is incumbent upon a trial judge to take a spouse's physical condition into account as a significant factor in determining whether an award of maintenance is proper. See *In re Marriage of Marcello*, 247 Ill. App. 3d 304, 313, 617 N.E.2d 289, 295 (1993). Accordingly, maintenance is generally appropriate where a spouse is not employable because of a physical condition. See *In re Marriage of Stam*, 260 Ill. App. 3d 754, 756-57, 632 N.E.2d 1078, 1079-80 (1994); *In re Marriage of Morse*, 240 Ill. App. 3d 296, 311, 607 N.E.2d 632, 643 (1993); *In re Marriage of Tietz*, 238 Ill. App. 3d 965, 972, 605 N.E.2d 670, 676 (1992). A dependent former spouse is entitled to continue to live in some approximation to the standard of living established during the marriage, unless the payor spouse's financial situation indicates otherwise. *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 833, 633 N.E.2d 82, 95 (1994).

In *Stam*, this court considered a situation remarkably similar to

the instant case. In the *Stam* case, the parties lived together for only 2½ years. Following the parties' separation, the wife was diagnosed with multiple sclerosis and was unable to work. She received $364 per month in social security benefits. The trial court awarded maintenance in the amount of $621 per month, reviewable after a period of three years. At the three-year review, the trial court extended the maintenance award for an additional four years, after which the award would again be reviewed. *Stam*, 260 Ill. App. 3d at 755, 632 N.E.2d at 1079.

On appeal, this court affirmed the trial court's order extending maintenance. In doing so, we rejected the husband's argument that maintenance should have been terminated based upon the relatively short duration of the marriage. *Stam*, 260 Ill. App. 3d at 756-57, 632 N.E.2d at 1079-80. We noted that the duration of the marriage was just one of many factors to be considered by the trial court. *Stam*, 260 Ill. App. 3d at 756, 632 N.E.2d at 1079-80. We also stated that, while a spouse requesting maintenance has an affirmative duty to seek gainful employment, this goal "must be balanced against a realistic appraisal of the likelihood that the spouse will be able to support herself in some reasonable approximation of the standard of living established during the marriage." *Stam*, 260 Ill. App. 3d at 757, 632 N.E.2d at 1080. We concluded that, because nothing in the record indicated that the wife would become self-sufficient in the future, "it was necessary for the court to reserve jurisdiction on this issue to avoid improper speculation." *Stam*, 260 Ill. App. 3d at 757, 632 N.E.2d at 1080.

■ Here, the evidence is uncontradicted that Rosalind has been diagnosed with a serious disease, myotonic dystrophy. Rosalind's testimony, and that of her supervisors at the bank, showed that she has difficulty performing tasks because of the symptoms of the disease and is unable to continue her work at the bank. Her only source of income is $636 per month from social security disability. The only property that she received in the judgment of dissolution of marriage was her 401(k) retirement plan, personal items of limited value and a motor vehicle worth no more than $6,000.

On the other hand, the record clearly shows that Richard earns an adequate income and is capable of providing maintenance for Rosalind. He has few debts and no dependents. The parties also had a significant combined income during the marriage. Rosalind's small income and limited property do not enable her to live anywhere near the standard of living established during the parties' marriage. Her income leaves her unable to meet her monthly needs without the assistance of her 60-year-old mother.

From our review of the record and applicable case law, we conclude that the trial court gave too much consideration to one factor, the short duration of the marriage. Moreover, the trial court did not adequately consider the other relevant factors, including Rosalind's needs, her present and future earning capacity, and her physical condition at the time the maintenance decision was made. Following our decision in *Stam*, we conclude that the trial court's order barring Rosalind from receiving maintenance from Richard was an abuse of discretion.

Accordingly, we remand this case to the trial court for a determination of an appropriate amount of maintenance based upon Rosalind's financial needs and Richard's ability to pay. Also, as in *Stam*, we conclude that the trial court should reserve jurisdiction on the maintenance issue so the circumstances of the parties can be periodically reviewed. Consequently, the trial court's judgment on remand should include a provision for periodic review of the maintenance order. See *Stam*, 260 Ill. App. 3d at 757, 632 N.E.2d at 1080; *Marcello*, 247 Ill. App. 3d at 315, 617 N.E.2d at 296.

### III. Health Insurance

■ We also agree with Rosalind that the trial court abused its discretion when it ordered Richard to provide health insurance for only two years. Following the two-year period, it is possible that Rosalind will be unable to obtain any health insurance coverage. As a result, we conclude that the trial court must review the cost and the parties' ability to obtain health insurance prior to the end of the two-year period.

### CONCLUSION

For the reasons indicated, the judgment of the trial court is reversed. The cause is remanded to the circuit court of Henry County for further proceedings consistent with this opinion.

Reversed and remanded.

BRESLIN, P.J., and HOLDRIDGE, J., concur.