**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190694-U

Order filed April 15, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* ADOPTION OF B.W. | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| (Theodore W. and Cheryl W., | ) | Tazewell County, Illinois. |
| | ) | |
| Petitioners-Appellees, | ) | Appeal No. 3-19-0694 |
| | ) | Circuit No. 18-AD-33 |
| v. | ) | |
| | ) | |
| Jermel D. P., | ) | The Honorable |
| | ) | Timothy J. Cusack, |
| Respondent-Appellant). | ) | Judge, presiding. |
| _____ | ) | _____ |
| | ) | |
| JERMEL D. P., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Petitioner-Appellant, | ) | Tazewell County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-19-0695 |
| | ) | Circuit No. 19-F-145 |
| | ) | |
| THEODORE W. and CHERYL W., | ) | The Honorable |
| | ) | Timothy J. Cusack, |
| Respondents-Appellees. | ) | Judge, presiding. |

JUSTICE CARTER delivered the judgment of the court.
Justices Schmidt and Wright concurred in the judgment.

**ORDER**

¶ 1    *Held*:    In adoption and parentage (presumably) cases that were consolidated on appeal, the appellate court found that: (1) the trial court correctly concluded that the respondent lacked standing to participate in the adoption case; and (2) the trial court properly dismissed the respondent's parentage case in its entirety. The appellate court, therefore, affirmed the trial court's judgment as to both cases.

¶ 2    Theodore W. and Cheryl W. (petitioners) filed a petition in the trial court to adopt the minor child, B.W., the maternal granddaughter of petitioners. Respondent, Jermel D. P., was named in the petition as a possible putative father of the child but under a slightly different name. While the case was proceeding, respondent filed a *pro se* petition in the trial court to establish his parentage of B.W. A hearing was scheduled to determine whether respondent had standing in the adoption case. Following the hearing, the trial court found that respondent had failed to timely register with the putative father registry, that respondent had failed to timely file a petition to establish parentage as to B.W., and that respondent lacked standing to participate in the adoption proceeding. Respondent filed a motion to reconsider, which the trial court denied. The trial court also dismissed a companion case (presumably a parentage case) that respondent had filed. Respondent appeals in both cases, and the cases have been consolidated on appeal. We affirm the trial court's judgment as to both cases.

¶ 3                                                    I. BACKGROUND

¶ 4    In May 2006, petitioners' daughter, Mary W. (Mary), gave birth to the minor, B.W. In approximately February 2007, the minor began residing with the petitioners. In October 2018, petitioners filed a petition in the trial court to adopt B.W. The petition alleged, among other things, that Mary was living in Tennessee and that she would consent to the adoption or, in the alternative, that she was an unfit parent/person as defined in the Adoption Act (750 ILCS 50/1(D) (West 2018)). The petition named two possible putative fathers, "Jamal [P.]" (an incorrect statement of respondent's name) and Earnest W. (Earnest), and stated that their consent

2

to the adoption was not necessary because neither putative father had complied with the state statutory requirements for the putative father registry or, in the alternative, that each putative father was an unfit parent/person as defined in the Adoption Act. Mary was personally served with a copy of the petition at her address in Tennessee. Earnest was personally served with a copy of the petition at his address in Peoria. There is no indication that respondent was personally served. A notice of publication was filed, however, as to respondent.

¶ 5    In May 2019, the trial court entered an interim order. In the interim order, the trial court took judicial notice of or found, among other things, that Mary had passed away, that Earnest (one of the possible putative fathers) had been personally served, and that respondent had been served by publication. Because neither possible putative father had appeared or filed any type of responsive pleading in the case, the trial court defaulted both putative fathers. The trial court appointed a guardian *ad litem* (GAL) to represent the interests of the minor in the proceedings, granted petitioners temporary custody of the minor, and set the matter for a finalization hearing to take place in July 2019.

¶ 6    In June 2019, respondent sent the circuit clerk a *pro se* letter stating that he had called the clerk's office about the adoption case but was unable to get the case number because that information was confidential. Respondent informed the clerk in the letter that he believed that he was the father of the minor, that he was opposing the adoption, and that he had sent a motion to stay the proceedings. Respondent stated further that he had also contacted the petitioners' attorney about the matter. Respondent attached to the letter (or sent at the same time) a *pro se* appearance, an application for waiver of court fees, and a petition to establish parentage. Those documents were filed in the adoption case. Despite respondent's statement in his letter, no motion to stay the adoption case was filed by respondent in the trial court.

3

¶ 7        In his petition to establish parentage, respondent alleged that he was believed to be the biological father of B.W.; that he had always believed and acted as if B.W. was his child; that he spent months supporting B.W. after B.W.'s birth; that he was never afforded an opportunity to sign a voluntary acknowledgment of paternity; that respondent and Mary (the child's mother) had established a verbal understanding that respondent was the father of B.W.; that as the "believed father" of B.W., he had standing to file the parentage petition; and that petitioners were trying to use the adoption laws to keep him from exercising his parental rights to B.W. Respondent asked the trial court to order that a deoxyribonucleic acid (DNA) test be conducted to determine if respondent was the biological father of B.W. and, if the test result was positive, to enter an order finding the existence of a father-child relationship between respondent and B.W. and to set temporary visitation for respondent.

¶ 8        In August 2019, the trial court held a hearing to determine whether respondent had standing in the adoption case. Present in court for the hearing were petitioners and their attorney, respondent, and the GAL. After evidence and arguments were presented, the trial court found that respondent did not timely register with the putative father registry or timely file a petition to establish parentage and that respondent, therefore, lacked standing to participate in the adoption proceedings.

¶ 9        In October 2019, respondent filed a motion to reconsider (dated September 2019). Respondent alleged in the motion that he had not consented to the adoption; that he had not been found to be an unfit parent/person; that the child had resided with Mary and petitioners (the adoptive parents) during the first six months of the child's life; that respondent was part of the child's life during that time period; that respondent had provided for the child's needs by way of clothes, toys, and a playpen; that respondent was objecting to the adoption; and that petitioners

4

were attempting to defraud or mislead the court into believing that respondent had abandoned the child when, in fact, respondent had taken many steps to try to establish his paternity with the petitioners. Respondent agreed in the motion that he did not register with the putative father registry but stated that his failing to do so did not completely negate his right to the child, his ability to obtain paternity, or his ability to proceed in the adoption case. Respondent asked the trial court, therefore, to conduct an evidentiary hearing to determine if the trial court's prior determination should be reversed.

¶ 10    Later that same month (October 2019), the trial court held a hearing on respondent's motion to reconsider. Present in court for the hearing were petitioners and their attorney, respondent, and the GAL. After listening to the arguments of petitioners and respondent, the trial court denied respondent's motion to reconsider. The trial court also dismissed the companion parentage case that respondent had filed. Respondent filed *pro se* appeals in both cases. The cases were consolidated on appeal on respondent's motion. Although a record of the trial court proceedings was filed in the appellate court, that record did not include the trial court file for the companion parentage case or a report of proceedings for either the adoption case or the parentage case.

¶ 11                                    II. ANALYSIS

¶ 12    On appeal, respondent argues that the trial court erred in making various rulings in the two consolidated cases. Respondent asserts, although somewhat implicitly at times, that: (1) the trial court should have stayed the adoption proceedings based upon the filing of respondent's parentage petition, should have ordered a paternity test at that time, and should not have allowed the adoption case to proceed without first determining whether respondent was the biological father of B.W.; (2) the trial court incorrectly found that respondent lacked standing to participate

5

in the adoption case; (3) the trial court should not have allowed the adoption to proceed since respondent was not consenting to the adoption; (4) the trial court should not have consolidated respondent's parentage case with the adoption case, should have allowed respondent to establish his parentage of the minor in that separate parentage case, and should not have dismissed the parentage case; (5) the petitioners' adoption petition should have been dismissed because petitioners were attempting to defraud and mislead the court as to petitioners' knowledge of respondent and respondent's whereabouts and as to respondent's intention to assert his parental rights to the minor; and (6) certain aspects of the trial court's rulings violated respondent's rights under the United States Constitution, including his right to due process, and respondent's rights under Illinois law. For all of the reasons stated, respondent asks that we reverse the trial court's judgment in both cases and that we remand the two cases for further proceedings.

¶ 13    Petitioners argue that the trial court's rulings in the two cases were proper and should be upheld. Addressing each of respondent's contentions in turn, petitioners assert first that respondent has forfeited any argument on appeal regarding whether the trial court should have stayed the adoption case because respondent failed to file a motion to stay the proceedings in the trial court and failed to ask the trial court to rule upon any such motion. Second, petitioners assert that the trial court's finding that respondent had no standing to participate in the adoption case was correct because: (1) respondent had failed to timely register with the putative father registry and had, therefore, waived his right to intervene in the adoption case under Illinois law; (2) respondent had not alleged any facts that would establish an exception to the statutory effect of failing to register with the putative father registry; and (3) respondent had not met any of the other criteria under the statute to establish that his consent was required before the adoption could proceed. Third, petitioners assert that the dismissal of respondent's parentage case was

6

also appropriate for the same reasons. Fourth and finally, petitioners assert that they complied with all of the statutory requirements for filing an adoption petition, that respondent waived his right to participate in the adoption case or to file a parentage petition by failing to register with the putative father registry, and that this court, therefore, should not address respondent's claim that petitioners were attempting to defraud or mislead the trial court. For all of the reasons set forth, petitioners ask that we affirm the trial court's judgment in both cases.

¶ 14     Respondent replies that he verbally raised his request to stay the adoption proceedings at various times in the trial court and has attached an unfiled copy of his written motion to stay to his reply brief on appeal. In addition, respondent asserts further in reply that he could not timely register with the putative father registry because he was in prison for a lengthy period; that he can show proof that he was in the child's life (certain photos, which are also attached to respondent's reply brief); that he repeatedly contacted the minor's mother about the minor; and that petitioners were aware of him, had spoken to him on several occasions, and knew his full name and address. Respondent again asks this court to reverse the trial court's judgment in both cases and to remand the two cases for further proceedings.

¶ 15                                    A. Standard of Review

¶ 16     The issues raised in this appeal present several different underlying questions, and some of those questions invoke different standards of review.[1] The main question posed—whether respondent had standing to participate in the adoption case and to file a parentage petition in the parentage case—is generally a question of law, which we will review *de novo*. See *Wexler v.*

---

[1] In violation of Illinois Supreme Court Rule 341(h)(3), (i) (eff. May 25, 2018), neither respondent nor petitioners have made any statement in their appellate briefs as to the appropriate standard or standards of review that should be applied in this appeal. We remind respondent and petitioners that the supreme court rules are not mere suggestions and must be followed. See *Prawdzik v. Board of Trustees of Homer Township Fire Protection District Pension Fund*, 2019 IL App (3d) 170024, ¶ 34.

*Wirtz Corp.*, 211 Ill. 2d 18, 23 (2004); *County of Cook ex rel. Rifkin v. Bear Stearns & Co.*, 215 Ill. 2d 466, 474 (2005); *In re C.H.*, 2018 IL App (3d) 180089, ¶ 9. In resolving the question of standing, to the extent that we are required to interpret both the putative father registry and consent provisions of the Adoption Act, that task is also a question of law that is subject to a *de novo* standard of review on appeal as well. See *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 50 (stating that statutory interpretation is a question of law that is subject to *de novo* review on appeal). Finally, to the extent that we reach the merits of any rulings by the trial court on motions to stay or to consolidate the proceedings, we will review those rulings to determine whether the trial court committed an abuse of discretion. See *J.S.A. v. M.H.*, 384 Ill. App. 3d 998, 1004-05 (2008).

¶ 17                              B. The Trial Court's Rulings in the Adoption Case

¶ 18                                        1. Standing and Consent

¶ 19         Setting aside for the moment respondent's claim that a stay should have been granted, we will first address two of the main questions raised in the adoption case—whether respondent had standing to participate in the adoption proceedings and whether respondent's consent was required before the adoption could proceed. To answer those questions, we must consider both the putative father registry provision and the consent provision of the Adoption Act.

¶ 20         The putative father registry provision, which is contained in section 12.1 of the Adoption Act, states, in pertinent part, as follows:

> "(g) Except as provided in subsections (b) or (c) of Section 8 [the consent
>
> provision] of this Act, a putative father who fails to register with the Putative
>
> Father Registry as provided in this Section is barred from thereafter bringing or

8

maintaining any action to assert any interest in the child, unless he proves by clear and convincing evidence that:

(1) it was not possible for him to register within the period of time specified in subsection (b) of this Section; and

(2) his failure to register was through no fault of his own; and

(3) he registered within 10 days after it became possible for him to file.

A lack of knowledge of the pregnancy or birth is not an acceptable reason for failure to register.

(h) Except as provided in subsection (b) or (c) of Section 8 [the consent provision] of this Act, failure to timely register with the Putative Father Registry (i) shall be deemed to be a waiver and surrender of any right to notice of any hearing in any judicial proceeding for the adoption of the child, and the consent or surrender of that person to the adoption of the child is not required, and (ii) shall constitute an abandonment of the child and shall be prima facie evidence of sufficient grounds to support termination of such father's parental rights under this Act." 750 ILCS 50/12.1(g), (h) (West 2018).

¶ 21    There is no dispute in the present case that respondent failed to register with the putative father registry. Respondent asserts, however, that he qualified for an exception to the consequences of failing to register under section 8(b) of the Adoption Act, the consent provision. Specifically, respondent relies upon subsection 8(b)(1)(B)(iv)[2], which provides that:

_____

[2] Although respondent quotes all of the exceptions contained in the consent provision, the only exception that respondent specifically addresses in his appellate brief is the exception contained in subsection 8(b)(1)(B)(iv).

"(b) Where consents are required in the case of an adoption of a minor

child, the consents of the following persons shall be sufficient:

***

[(1)](B) The father of the minor child, if the father:

(iv) in the case of a child placed with the adopting parents

less than 6 months after birth, made a good faith effort to pay a

reasonable amount of the expenses related to the birth of the child

and to provide a reasonable amount for the financial support of the

child before the expiration of 30 days following the birth of the

child, provided that the court may consider in its determination all

relevant circumstances, including the financial condition of both

biological parents[.]" 750 ILCS 50/8(b)(1)(B)(iv) (West 2018).

¶ 22 After having reviewed the relevant provisions of the Adoption Act and the record in the present case, we find that respondent did not have standing to participate in the adoption case and that the trial court was not required to obtain respondent's consent before it could proceed with the adoption. As noted above, respondent did not register with the putative father registry and would have been barred, therefore, from bringing or maintaining any action to assert any interest in the child after the adoption petition had been filed. See 750 ILCS 50/12.1(g) (West 2018); *J.S.A. v. M.H.*, 224 Ill. 2d 182, 203-10 (2007) (finding that the putative father, under the circumstances of that case, was not barred from filing a petition to establish parentage/parentage action since at the time the putative father filed his parentage action a petition for adoption had not been filed and it was not contemplated that a petition for adoption would be filed); *Petition of K.J.R.*, 293 Ill. App. 3d 49, 58 (1997) (finding in a case where a petition to adopt the minor in

10

question had already been filed, that the putative father was barred from filing a parentage action as to the minor because the putative father had failed to register with the putative father registry). Although respondent suggests that he was prevented from registering because he was in prison, the record on appeal in that regard is incomplete and does not support respondent's suggestion. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984) (stating that any doubts that arise from an incomplete record on appeal must be construed against the appellant). However, even if respondent had been able to substantiate such an excuse with the record on appeal, he would still have been required to register within 10 days after it became possible for him to do so (see 750 ILCS 50/12.1(g)(3) (West 2018)), which respondent clearly did not do in the present case.

¶ 23 Furthermore, while respondent claims that subsection (b)(1)(B)(iv) of the consent provision excepts him from the consequences of failing to register with the putative father registry, a review of that provision and of the limited record presented on appeal show that subsection (b)(1)(B)(iv) does not apply to respondent in the present case. Even if we assume, for argument's sake, that the minor began to live with petitioners less than six months after the minor's birth as required by subsection (b)(1)(B)(iv), there is no indication in the record before us that respondent paid any of the minor's birth expenses as specified in the statute. See 750 ILCS 50/8(b)(1)(B)(iv) (West 2018). In addition, while respondent claims that he paid some of the child's other expenses during the first six months of the child's life, such as toys, clothes, and a playpen, it can hardly be stated that those expenses constituted a "reasonable amount" as referenced in the statute. See *id.* Nor is there any indication that respondent paid any of those alleged expenses during the first 30 days after the child's birth as the statute requires. See *id.* Under the circumstances of the present case, therefore, we conclude that respondent was not excepted from the consequences of failing to register with the putative father registry and that

11

respondent's consent to the adoption was not required. See 750 ILCS 50/8(b)(1)(B)(iv), 12.1(g) (West 2018).

¶ 24                                    2. Respondent's Remaining Contentions in the Adoption Case

¶ 25            As for respondent's remaining contentions—that the trial court should have stayed the adoption case, that the trial court's rulings deprived respondent of his right to due process, and that petitioners defrauded and misled the trial court—we reject those contentions. First, regarding whether the trial court should have stayed the adoption case, as petitioners correctly note, there is no indication in the record on appeal that respondent filed a written motion to stay the proceedings in the trial court or that respondent verbally raised his request for a stay during any of the trial court proceedings. Although respondent attached an unfiled copy of a motion to stay to his reply brief, that attachment is not part of the official record on appeal and may not be considered by this court (see *Chapman v. Chapman*, 285 Ill. App. 3d 377, 381 (1996) (stating that attachments to a brief, which have not been made part of the official court record on appeal, may not be considered by the appellate court)). In addition, no report of proceedings has been filed in the adoption case so there is no way to substantiate anything that respondent might have stated in the trial court with regard to a stay. As the appellant, respondent had the burden in this appeal to present a sufficiently complete record of the trial court proceedings to support his claims of error. See *Foutch*, 99 Ill. 2d at 391-92. Because respondent has failed in that burden, we must presume that the trial court's rulings were in conformity with law and had a sufficient factual basis, and we must resolve any doubts that arise from the incompleteness of the record against respondent. See *id.* Furthermore, because the record in the adoption case does not indicate that respondent raised his request for a stay in the trial court, we must conclude that respondent has forfeited any argument on appeal as to whether a stay should have been granted.

12

See *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶¶ 14-15 (indicating that issues not raised in the trial court are generally forfeited on appeal).

¶ 26 Second, as for respondent's due process claim, that same type of claim has already been analyzed and rejected by the United States Supreme Court and by other districts of the Illinois Appellate Court under circumstances that were similar to the present case. See *Lehr v. Robertson*, 463 U.S. 248, 256-65 (1983) (finding that a similar putative father registry provision in New York did not deprive the putative father of his due process rights under the United States Constitution by allowing the trial court to enter an adoption decree as to the minor child without giving prior notice and a hearing to the putative father where the putative father had failed to register with the state's putative father registry, even though the trial court in the adoption case had become aware that the putative father had subsequently filed a parentage petition as to the minor in another case); *K.J.R.*, 293 Ill. App. 3d at 67-68 (finding that the putative father's due process rights under the United States Constitution were not violated by the putative father registry provision of the Adoption Act, which barred the putative father from bringing or maintaining a parentage petition, where the putative father had failed to register with the putative father registry and did not fall within any of the other statutory categories wherein he would have been entitled to notice of the adoption proceedings); *In re A.S.B.*, 293 Ill. App. 3d 836, 845-46 (1997) (finding that the trial court did not violate the putative father's due process rights by granting an adoption decree as to the minor child without notice to the putative father where the putative father had failed to register with the putative father registry and had not established any relationship with the minor). For the same reasoning stated in those cases, we reject respondent's due process argument in this case. See *Lehr*, 463 U.S. at 256-65; *K.J.R.*, 293 Ill. App. 3d at 67-68; *A.S.B.*, 293 Ill. App. 3d at 845-46.

13

¶ 27　　　　Third, with regard to respondent's claim that petitioners defrauded and mislead the trial court, we find that those claims have no support in the record that has been presented and must be disregarded.

¶ 28　　　　　　　　　C. The Trial Court's Rulings in the Parentage Case

¶ 29　　　　Turning to respondent's claims of error in the parentage case (that the trial court should not have consolidated the parentage case with the adoption case and should not have dismissed the parentage case in its entirety), we again note that the record that has been filed on appeal does not include any of the documents that were filed in the trial court in the parentage case or a report of proceedings for that case. We must presume, therefore, that the trial court's rulings in the parentage case were in conformity with law and had a sufficient factual basis. See *Foutch*, 99 Ill. 2d at 391-92. Based upon the legal principles that apply when an incomplete record has been filed on appeal, we affirm the trial court's rulings in the parentage case, including the trial court's ruling to consolidate the parentage case with the adoption case and its ruling to ultimately dismiss respondent's parentage case in its entirety. See *id.*

¶ 30　　　　　　　　　D. The Failure To Comply With the Supreme Court Rules for Appeals

¶ 31　　　　As a final note, we remind parties that proceed before the appellate court of the importance of following the supreme courts rules that apply to appeals. Those rules apply regardless of whether a party is proceeding in an appeal *pro se* or is represented by an attorney. See *Multiut Corp. v. Draiman*, 359 Ill. App. 3d 527, 534 (2005). In this particular case, for example, despite the clear and specific requirements contained in Supreme Court Rule 341, respondent's brief on appeal failed to contain a statement of facts, a statement of the standard of review, citations to the record on appeal, and citations to any legal authority (other than the applicable statutes). See Ill. S. Ct. R. 341(h) (eff. May 25, 2018). Those failings could have

14

resulted in respondent's appeal being dismissed outright. See *Roy Zenere Trucking &*
*Excavating, Inc. v. Build Tech, Inc.*, 2016 IL App (3d) 140946, ¶ 54 (noting, in part, that an
appellate court may dismiss an appeal where a party has failed to comply with Supreme Court
Rule 341). Further complicating our review in this case was respondent's failure to present an
adequate record for review of his claims of error. See Ill. S. Ct. R. 321 (eff. Feb. 1, 1994), R.
323 (eff. Jul. 1, 2017); *Foutch*, 99 Ill. 2d at 391-92.

¶ 32                                    III. CONCLUSION

¶ 33        For the foregoing reasons, we affirm the judgment of the circuit court of Tazewell
County in both of the consolidated cases.

¶ 34        Affirmed.