MARY K. HOLLENSBE, Petitioner-Appellant, v. S. R. HOLLENSBE, Respondent-Appellee.

Fifth District No. 5—86—0785

Opinion filed January 22, 1988.

Richard A. Cary and Janie F. Smith, both of Wham & Wham, of Centralia, for appellant.

David A. Campbell and Carl L. Favreau, both of Campbell, Furnall, Moore & Jacobsen, P.C., of Mt. Vernon, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

The petitioner, Mary K. Hollensbe, and the respondent, S. R. Hollensbe, were married on July 1, 1950, and a judgment of dissolution was entered on November 26, 1986. Three children were born of this marriage in 1958, 1960, and 1965. The marriage lasted over 36 years, and, at the time of the dissolution hearing, all but the youngest child was emancipated. This child was out of the home, living in an apartment and attending college.

A petition for dissolution was filed on June 18, 1981, after a separation on June 8, 1981. A temporary order of support and maintenance was entered shortly thereafter, and this order was modified on July 17, 1984. A property division hearing was conducted during February 1986, and, in November 1986, a series of orders and docket entries were entered. Finally, on November 26, 1986, a judgment was entered disposing of property and maintenance issues. It is from this judgment that the instant appeal is taken.

The appeal is basically over the trial court's granting of maintenance in lieu of a division of marital property. Since this was a marriage of long duration, all but a few items were marital property. From the outset of the trial the respondent took the position that he should pay maintenance and keep the bulk of the marital property, while the petitioner demanded what she considered to be her fair share of the marital property. The respondent felt that the marital assets should not be subject to division but that the petitioner should receive maintenance from the income the respondent earned using the marital assets through his knowledge and experience as a geologist.

The petitioner was a high school graduate with no particular skills

in the labor market. The couple was married shortly after she graduated from high school. Her contribution to the marriage was basically that of a housewife and manager of the household duties, which included the raising of the children. The respondent agreed she did this job well. The evidence showed that at the time of the hearing she was 56 years old and in poor health, unable to hold a job if she had been suited to one. The respondent was a geologist at the time of the marriage and, through his efforts in his job and investments, certain property was obtained and purchased. He maintained that although the petitioner did well in her housewifely duties, she was a detriment to him in his profession.

As indicated above, a separation occurred in 1981. The respondent moved to Indiana and purchased a home, while the petitioner lived in the marital home. She maintained the marital home, paid the taxes, and eventually paid off the mortgage on it prior to the hearing on the property settlement. She did this with moneys she received from the respondent plus certain funds she was able to obtain by withdrawing money from bank accounts.

The major issue in this case is whether or not the trial court, in its final judgment, correctly used maintenance as a substitute for a division of the marital assets.

The trial court found that the petitioner was in need of support from the respondent and that the respondent was capable of providing permanent maintenance for her. The court further found that it would not be in the parties' best interests financially to award oil or other properties to the petitioner in lieu of maintenance.

The trial court awarded the petitioner marital property that included the home and 30 acres, the household furnishings valued at $115,135, a $3,000 automobile, $50,000 from an escrow account, and other moneys from insurance and bank accounts. The respondent received $18,000 in nonmarital property. He was also awarded $212,684.17 from the escrow fund, his home in Indiana valued at $28,333, two cars, a truck and a boat in total value of $17,800, oil properties (working interests and overriding royalties) with a total value of $265,000, retirement benefits of $32,000, and certain other items.

The escrow account was money placed there from the sale of the respondent's stock in Shakespeare Oil Company. Shortly after his separation from the petitioner, the respondent left his employment with Shakespeare Oil Company and sold his interest in the company. This money was placed in escrow and gained interest as well as paid taxes. By April 1, 1986, the amount in the escrow account had become

$365,196.17. From this escrow account the court ordered payment of attorney fees for both sides, totalling approximately $70,000.

In addition to the allocation of the nonmarital and marital property, the trial court granted maintenance to petitioner as follows:

"H. Respondent is hereby ordered to pay to Petitioner as and for her permanent maintenance the sum of $300.00 per week, (valued at $198,347.61, based on a 6% discount and Petitioner's life expectancy of twenty-four years), which amount shall be payable to Wife for the remainder of her life. In the event Respondent shall predecease Petitioner, then said $300.00 per week shall continue to be paid to Petitioner out of Respondent's estate until the death of Petitioner or until the total sum of $198,347.61 has been paid as maintenance, whichever event first occurs."

In the trial court the respondent argued that due to the peculiar nature of the oil business, it was necessary for him to keep all the oil property and a lion's share of the escrow account to properly maintain his present interests and do business in the future. He argued that the oil interests could not be sold to outsiders, including family members, because of the need to constantly maintain and improve production and the costs involved therein. The respondent went to great lengths to describe this procedure and the need for income from the wells and other income to constantly improve their holdings. He also stated that there were oral and written agreements among the parties to maintain a closely knit group of investors.

Sections 503(d) and 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1983, ch. 40, pars. 503(d), 504(a)), are pertinent and are set forth as follows:

"[503](d) In a proceeding for dissolution of marriage or declaration of invalidity of marriage, *** the court shall assign each spouse's nonmarital property to that spouse. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:

(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and nonmarital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live

therein for reasonable periods, to the spouse having custody of the children;

(5) any obligations and rights arising from a prior marriage of either party;

(6) any antenuptial agreement of the parties;

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(8) the custodial provisions for any children;

(9) whether the apportionment is in lieu of or in addition to maintenance;

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income; and

(11) the tax consequences of the property division upon the respective economic circumstances of the parties." Ill. Rev. Stat. 1983, ch. 40, par. 503(d).

"Sec. 504. Maintenance. (a) In a proceeding for dissolution of marriage or legal separation or declaration of invalidity of marriage, \*\*\* the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

(1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and

(2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home, or

(3) is otherwise without sufficient income." Ill. Rev. Stat. 1983, ch. 40, par. 504(a).

■ As indicated in subsection 504(a)(1), the issue of maintenance is interrelated with the distribution of marital property. Maintenance is inappropriate where a spouse has sufficient property, or a combination of property and income, to satisfy his or her reasonable needs. *In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 411 N.E.2d 238.

■ We are well aware of the rule of law that the reviewing court will not substitute its judgment for that of the trial court. "The standard of review of a property division is that the trial court's judgment will be disturbed only upon a showing of abuse of discretion. [Citation.] In determining whether the trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court but whether the trial court acted arbitrarily without the employment of conscientious judgment." *In re Marriage of McDonald* (1983), 113 Ill. App. 3d 116, 119, 446 N.E.2d 559, 561.

■ In this case, there does not appear to be a real difference of opinion as to the valuation of the major items of controversy, the escrow account and the oil interests. Rather, the trial court took the position that instead of making a distribution of the marital property, it would furnish the petitioner with what it considered to be adequate maintenance. We disagree with this approach by the trial court. *In re Marriage of Donovan* (1984), 122 Ill. App. 3d 803, 462 N.E.2d 9, holds that an award of maintenance should be based solely upon the perceived need of the spouse and should not be made in lieu of an award of marital property.

In *Aschwanden* the supreme court held that the Marriage and Dissolution of Marriage Act does not mandate an equal distribution of marital property between spouses; rather, the Act provides the trial court with discretion to divide marital property in what it considers to be "just proportions," taking into account listed factors, along with other factors that are deemed relevant in a particular case. The court went on to say that where property available to the wife is sufficient to satisfy such spouses's needs, use of maintenance should be limited. If there is not sufficient marital property, maintenance should be considered. Thus, if sufficient property is found, an award may be unnecessary. Further, the court cautioned against placing too much emphasis on monetary contributions over nonmonetary contributions.

It is generally held that the purpose of the Act is to make division of property the primary means of providing for the future financial needs of the spouses. (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382.) In *Kujawinski* the supreme court ruled on the constitutionality of the Act and went on to say:

> "The primary legislative objective is to create a system of property division upon dissolution of marriage that is more equitable than that which previously existed in this State. It is evident that the legislature recognized glaring inequities in the earlier law and favored change. For instance, by giving both spouses an interest in 'marital property' upon dissolution of marriage, the legislature sought to award economic credit in the distribution of property for indirect or domestic contributions to the accumulation of property and sought to replace the concept of post-marital support through alimony with one of post-marital stability through a just distribution of marital property and assets." *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 576, 376 N.E.2d 1382, 1388.

The respondent argued successfully before the trial court that the oil business is unique and that most all of the assets were necessary to

maintain the present and future oil properties. The moneys in the escrow account are not unique and certainly neither are the overriding working interests. Furthermore, a payment of cash based upon just proportions would not be difficult. The trial court apparently felt that it would be safer and that the petitioner would be more secure if she were "kept" financially for the rest of her life. This flies in the face of the concept of the new Illinois Marriage and Dissolution of Marriage Act. As suggested earlier in this opinion, maintenance should not be the primary source of income for the petitioner and should only be used in the event a just division of marital property and nonmarital property will not provide for her needs.

The efficacy of a property distribution results from placing in the hands of each party a definable or ascertainable portion of some attributes of ownership. In distributing property, courts should seek a high degree of finality so that parties can plan their future with certainty and are not encouraged to return repeatedly to the courts. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087.) An important objective to be reached by the trial court is to place the parties in a position to begin anew. An inadequate division of marital property with a substantial maintenance order has many pitfalls. The petitioner might only live a short time or the respondent could fail in his business efforts, become ill or incapacitated, or dissipate the property allotted to him. The concept of the Act now in force anticipates those problems.

■ Further, much was made of the argument that certain properties were acquired after the separation and before the dissolution. The value of the marital property should be based upon the value as of the date of dissolution and not at time of physical separation. (*Cooper v. Cooper* (1986), 146 Ill. App. 3d 943, 497 N.E.2d 805.) Properties acquired before and after separation should not be considered differently.

We hold that the trial court's property award failed to meet the "just proportions" requirement of section 503(d) of the Act (Ill. Rev. Stat. 1983, ch. 40, par. 503(d)). We, therefore, reverse and remand and order the trial court to make a just distribution of all the marital property. The trial court should consider all of the relevant subsections of section 503(d) in this distribution and then, and only then, determine if maintenance is necessary. The trial court's original maintenance award does not make the award equitable.

Reversed and remanded.

HARRISON, P.J., and CALVO, J., concur.