22 December 1999
 

No. 2--98--1488

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

In re
 MARRIAGE OF ) Appeal from the Circuit Court

THOMAS M. BRACKETT, ) of McHenry.

)

Petitioner-Appellee, )

)

and ) No. 96--DV--1157

)

MARGARET J. BRACKETT, ) Honorable

) Gerald M. Zopp, Jr.,

     Respondent-Appellant ) Judge, Presiding.

______________________________________________________________________________

JUSTICE RAPP delivered the opinion of the court:

Respondent, Margaret Brackett, appeals from that part of the trial court's judgment concerning property distribution,  maintenance, and attorney fees following dissolution of her marriage to petitioner, Thomas Brackett.  Respondent raises multiple issues, contending that the trial court abused its discretion.  Petitioner moved to dismiss this appeal, and we took the motion with the case.  We deny the motion in part and reverse and remand.

I. FACTUAL BACKGROUND

After more than 20 years of marriage, the parties separated in August 1996.  In December of that year, petitioner filed for dissolution of marriage under the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 
et seq.
 (West 1996)).  At trial, evidence was presented with respect to marital property, child support, maintenance, and attorney fees.  The parties were the only witnesses to testify.  

The evidence revealed that at the time of trial petitioner and respondent were in their mid-forties and had two children.  One child was an adult and one was a minor.  The eldest child was attending college.  Both children had college savings accounts worth more than $40,000 each. 

Petitioner was the director of information services for Commonwealth Edison, having held the position for some time.  His annual gross salary in 1997 was $90,688.  Through his employer, petitioner had a 401(k) account worth slightly more than $44,000 and a pension with a current accrued monthly benefit of just over $3,000, based upon years of service to date.  No evidence regarding the actual cash value of the pension was presented.  Petitioner indicated that he planned to work an additional 15 years before retiring.  During the early years of the marriage, respondent was a high school teacher, and later she was a substitute teacher and housewife.  In 1993, respondent was diagnosed with multiple sclerosis, which caused her to be wheelchair-bound.

The parties owned a house in Cary, Illinois, valued between $280,000 and $300,000.  There was a mortgage balance of approximately $149,000 with a monthly payment of $1,500.  While the house was apparently fully furnished, no evidence as to the value of its contents was presented.  There were also two automobiles with a combined value of $12,000 and no encumbrances.  In addition, there was credit card debt of approximately $11,000--around $6,000 on Visa and $5,000 on MasterCard.

At the close of the evidence, respondent filed a petition for contribution to attorney fees and costs pursuant to section 503(j) of the Act (750 ILCS 5/503(j)(West 1996)).  No evidence was taken by the trial court on the petition, nor was a separate ruling on the petition ever issued.  However, in the final judgment of dissolution of marriage the trial court ordered that "[e]ach [party] shall pay [his or her] own attorney's fees and costs herein. [The] Petition to [
sic
] Contribution is denied."

The trial court requested closing arguments to be submitted in writing.  In her argument, respondent requested that: (1) she receive the proceeds from the sale of the marital home and the majority of its contents; (2) she receive half of petitioner's 401(k) account; (3) she be given occasional use of one of the automobiles; (4) both she and petitioner each keep [his or her]  current savings and checking accounts; (5) she be designated as a beneficiary of petitioner's basic and supplemental life insurance policies; and (6) she receive $4,000 per month as permanent maintenance.  Respondent argued that the high amount of maintenance was appropriate because she was unemployable due to her progressively worsening disease and her need for long-term medical assistance.  Social Security and similar public assistance were unavailable.  The argument conceded:

"Thomas should be awarded his Commonwealth Edison pension.  This is a non income [
sic
] producing asset and would be the basis for Thomas to pay permanent maintenance upon his retirement.  Margaret, unless she remarries, would have his spousal share of social security at the time she is 62." 

In his argument, petitioner agreed that respondent should receive the proceeds from the sale of the marital home.  He requested, however, that the proceeds be used to (1) pay the existing mortgage balance; (2) pay all real estate taxes due; (3) pay broker's commissions and closing costs; (4) pay both the Visa and MasterCard debts; and (5) pay repair and maintenance costs incurred while the home was on the market.  Petitioner argued that the balance of the proceeds should be applied to the acquisition of a new residence for respondent.  Petitioner also requested a second mortgage be taken on respondent's new residence in the amount of $35,000 and be paid to him as reimbursement for his contribution to the marital residence.  He also asked to be awarded his entire 401(k) account and to be allowed to keep his entire pension until he entered pay status, at which time he would pay respondent $1,032 per month as maintenance.  Finally, petitioner agreed that respondent was entitled to permanent maintenance, "so long as her condition persists"; however, he believed that he should be obligated to pay only $115 per week for maintenance and $235 per week for child support.  Respondent's response to petitioner's argument, stated "[respondent] requests this [c]ourt enter an [o]rder consistent with [respondent's] [c]losing [a]rgument."

The trial court took the matter under advisement and informed the parties that a decision would be forthcoming.  A few days before the trial court was to render its decision, respondent filed an emergency petition asking the trial court to reopen the case because her condition had deteriorated to the point where she was in need of 24-hour-a-day care and her vision was greatly impaired.  The trial court denied the motion, but at the hearing prior to rendering judgment, it took note of respondent's worsening condition.  Through counsel, the trial court was informed that the Department of Rehabilitative Services (DORS) had authorized $1,583 per month to pay for someone to care for respondent.  The trial court then stated:

"All right.  Whatever the circumstances it's the opinion of this Court that we need to put Mrs. Brackett in a situation where her financial condition is known, and a state agency can deal with the problem due to the fact that a divorce is happening here."

On September 3, 1998, the trial court entered its written order.  The marital residence was to be sold.  Petitioner was to maintain health insurance for the children through college and pay $241 per week child support while the minor child was living with respondent or until the child reached the age of majority in February 2000.  Petitioner was also required to pay the monthly mortgage on the marital residence until it was sold or until June 30, 1999, whichever came first.  Commencing January 1, 1999, petitioner's payment of the mortgage would be considered maintenance.  Petitioner was ordered to pay respondent $125 per week "as and for temporary maintenance" "until sale and closing of the marital home."  Upon the sale of the home, maintenance was subject to modification.

The order entitled petitioner to take all appropriate tax deductions.  He was awarded as his sole and separate property both automobiles but was required to make one available for family use.  Finally, petitioner was awarded his entire pension but was required, upon his retirement, to pay respondent as maintenance 50% of the current monthly benefit, not to exceed $1,532 per month.  The trial court stated that it did not

"want to see Mr. Brackett lose the totality of the benefit available under the pension plan in the event that Mrs. Brackett should die before attaining age 60 *** .  Truly, Mrs. Brackett is entitled to a 50-50 split of that.  And were this Court to give that to her at this point, that would be lost to Mr. Brackett.  And in the event that she should die, that would not even be available to support him."

Respondent was awarded the bulk of the contents of the marital home as well as the net proceeds from the sale of the home.  The trial court defined the net proceeds as the gross sales price of the house minus (1) the mortgage balance, (2) the closing costs, (3) reimbursement to petitioner for payment of the second installment of real estate taxes and maintenance and repair costs, (4) payment of a portion of the credit card debt, and (5) respondent's attorney fees and costs.  The trial court also awarded respondent $10,000 from the 401(k) account.  Both parties were  allowed to keep monies currently held in their respective bank accounts or previously withdrawn from joint accounts.

Respondent filed a motion to reconsider on September 29, 1998, which was denied October 19, 1998.  The motion asked the trial court to reconsider its "maintenance award and division of marital debts," but the court did not seek reconsideration of the division of marital assets, including the pension.  On November 12, 1998, additional co-counsel entered an appearance on behalf of respondent and filed a "revised second motion to reconsider" the judgment.  A notice of appeal was filed November 18, 1998, by respondent's original counsel.  It stated that respondent was appealing the judgment and the "[o]rder entered October 19, 1998[,] denying Motion to Reconsider."  The trial court dismissed respondent's "revised second motion to reconsider" as untimely because it was filed well past 30 days after judgment.

On appeal, respondent raises issues concerning maintenance, property distribution, and attorney fees.  She argues that the trial court abused its discretion when it made public aid the goal of its maintenance award, when it failed to award an appropriate amount of maintenance, and when it awarded rehabilitative as opposed to permanent maintenance.  She also argues that the trial court did not divide the marital assets and debts in just proportions, particularly because she was not awarded any property interest in the pension and was required to pay a number of debts out of her share.  Finally, respondent contends that the trial court's failure to award attorney fees was an abuse of discretion.  Petitioner filed a motion to dismiss this appeal, arguing that events occurring after the filing of the notice of appeal rendered certain issues moot or constituted a release of errors.  We took the motion with the case.  We now address the motion and the issues raised on appeal.

III. ANALYSIS

A. Motion to Dismiss

Petitioner moves to dismiss this appeal on the ground that it is barred by the doctrine of release of errors or, alternatively, moves to strike certain issues relating to maintenance because they are moot.  For the following reasons, we deny the motion with respect to release of errors and grant it in part with respect to the mootness of certain issues relating to maintenance.  

Generally, an appellate court lacks jurisdiction to consider matters that take place after the filing of a notice of appeal; however, we may consider for limited purposes those matters that are collateral or incidental to the judgment from which an appeal was taken.  
Mitchell v. Atwood Enterprises, Inc.
, 253 Ill. App. 3d 475, 478 (1993).  A matter is collateral or incidental if it lies outside the issues in an appeal or arises subsequent to the judgment from which an appeal was taken.  
Mitchell
, 253 Ill. App. 3d at 478.  Petitioner's motion to dismiss revolves around the payment of maintenance and the sale of the marital home pursuant to the judgment in this case.  For the most part, we find these matters incidental to the judgment from which this appeal was taken, but we will consider them only with respect to the motion to dismiss.

Petitioner argues that this entire appeal is barred by the doctrine of release of errors because respondent has accepted "property rights and money conferred" upon her by virtue of the judgment of dissolution.  In the context of a divorce action, the doctrine of release of errors bars an appeal if, by reason of the nonmovant accepting benefits of the judgment appealed from, the movant would be distinctly disadvantaged were the judgment reversed.  
In re Marriage of Pitulla
, 202 Ill. App. 3d 103, 110-11 (1990).  The existence of a distinct disadvantage is the critical inquiry,
 and the movant bears the burden of establishing its existence.  
See, 
e.g.
, 
In re Marriage of Petramale
, 102 Ill. App. 3d 1049, 1054 (1981).  

Petitioner has presented no reason why he would suffer a distinct disadvantage upon reversal.  On remand the marital property can be redistributed in accordance with the Act.  We find the doctrine of release of errors inapplicable in this case.

Petitioner also argues the issues pertaining to maintenance are moot by virtue of the marital residence being sold and maintenance being modified subsequent to the judgment in this case.  Generally, all or a portion of an appeal will be dismissed when we have notice of matters over which we have jurisdiction that render the issues involved moot.  
Wick v. Chicago Telephone Co.
, 277 Ill. 338, 341 (1917).  An issue is moot when there is no longer an entitlement to relief or when rights are no longer controverted.  
In re Marriage of Wright
, 89 Ill. 2d 498, 500 (1982).  

During the pendency of this appeal the marital residence was sold in accordance with the judgment, and the net proceeds were deposited in a bank account.  In her brief, respondent raises issues pertaining to matters contingent upon the sale of the house.  Because the house has been sold, there is no longer a controversy in that regard.  Petitioner contends that modification of the initial award of maintenance renders all issues pertaining to maintenance moot.  We do not have jurisdiction over the modification of maintenance subsequent to the judgment in this case.  The modification is neither collateral nor incidental to the judgment because it involved the filing of a new petition and the entry of a new order.  The filing of a new notice of appeal as to any modification of maintenance would be required to vest us with jurisdiction.  We now turn to the merits of this case, first addressing respondent's challenge to the property distribution because it is dispositive of this case.

B. Marital Property Distribution

Respondent challenges the trial court's property distribution, contending that is was unjust under the circumstances.  A trial court enjoys discretion in distributing marital assets and debts; we will not reverse absent an abuse of discretion.  
In re Marriage of DeRossett
, 173 Ill. 2d 416, 422 (1996).  Respondent specifically argues that, in light of the overall property distribution, the trial court abused its discretion by awarding her maintenance payable from petitioner's pension in lieu of a property interest in the pension.  Petitioner counters that respondent has waived this issue because she did not object to the distribution of assets at trial or in her motion to reconsider.  In the majority of cases we would agree, but not in this very rare instance.  

Generally, issues not objected to at trial or raised in posttrial motions are considered waived and cannot be argued for the first time on appeal.  
In re Marriage of Minear
, 181 Ill. 2d 552, 564 (1998).  However, we have the responsibility to ensure just results and therefore we are not bound by the waiver rule.  
In re Marriage of Bennett
, 131 Ill. App. 3d 1050, 1055 (1985).  In exceptional cases, we may refuse to apply waiver in the interests of justice.  
Bennett
, 131 Ill. App. 3d at 1055.  

Here, respondent did not object to the trial court's distribution of assets at trial or in her motion to reconsider.  In fact, in her closing argument, respondent specifically asked the trial court to distribute the pension in the manner in which it did.  Thus, the waiver rule is implicated.  Nonetheless, respondent's poor health and her need for 24-hour-a-day assistance convince us in the interests of justice to ignore waiver in this case.  Moreover, respondent, in her final argument, requested a property distribution package that sought a greater amount of petitioner's 401(k) account than was actually awarded, and it is evident that the overall property distribution is insufficient to meet her needs.  We will thus address the merits of respondent's argument.

Section 503(d) of the Act requires the division of marital property upon the dissolution of marriage.  750 ILCS 5/503(d) (West 1996).  Marital property is "all property acquired by either spouse subsequent to the marriage."  750 ILCS 5/503(a) (West 1996).  This encompasses pensions, such as petitioner's, that accrue during a marriage.  See generally
 
In re Marriage of Wenc
, 294 Ill. App. 3d 239 (1998).  Marital property must be divided in "just proportions" in light of the relevant circumstances of the parties.  750 ILCS 5/503(d) (West 1996).  Just proportions does not necessarily mean mathematical equality; rather, the distribution must be equitable under the circumstances.  
In re Marriage of Morris
, 266 Ill. App. 3d 277, 281 (1994).

Though it is generally recognized that the distribution of marital property is interrelated with maintenance (see 750 ILCS 5/504(a)(1) (West 1996)), the purpose of the Act is to make the  division of marital property the primary means of providing for the future financial needs of the parties.  
Hollensbe v. Hollensbe
, 165 Ill. App. 3d 522, 527 (1988), citing 
Kujawinski v. Kujawinski
, 71 Ill. 2d 563 (1978).  Thus, the Act implicitly provides for an award of property in lieu of maintenance (750 ILCS 5/503(d)(10) (West 1996)), but it does not provide for an award of maintenance in lieu of property.  We hold that an award of maintenance in lieu of property is improper.  See 
Hollensbe
, 165 Ill. App. 3d at 527; 
In re Marriage of Donovan
, 122 Ill. App. 3d 803, 806 (1984).  As stated in 
Hollensbe
:

"The efficacy of a property distribution results from placing in the hands of each party a definable or ascertainable portion of some attributes of ownership.  In distributing property, courts should seek a high degree of finality so that the parties can plan their future with certainty and are not encouraged to return repeatedly to the courts. [Citation.] An important objective to be reached by the trial court is to place the parties in a position to begin anew.  An inadequate division of marital property with a substantial maintenance order has many pitfalls.  The petitioner might only live a short time or the respondent could fail in his business efforts, become ill or incapacitated, or dissipate the property allotted to him.  The concept of the Act *** anticipates those problems."    
Hollensbe
, 165 Ill. App. 3d at 528.

The trial court in this case recognized respondent's entitlement to 50% of the value of petitioner's pension.  Yet, it did not award respondent a property interest in the pension.  Rather, the trial court ordered petitioner upon entering pay status (some 15 or more years in the future) to provide maintenance from the proceeds of the pension in lieu of a property interest.  This was erroneous as a matter of law and therefore an abuse of discretion. 

The trial court was concerned that awarding a property interest in the pension to respondent could potentially deprive petitioner of the ability to support himself in the future.  The trial court based its decision on the assumption that respondent would likely predecease petitioner.  It did not want to see petitioner lose the benefit of the pension in that event.  The trial court, however, failed to consider the opposite scenario--the unlikely event that petitioner predeceases respondent.  If that were to happen, respondent would be doubly deprived.  Not only would she lose the benefit of the property interest in the pension but also she would lose any potential future maintenance.  The obligation  to pay future maintenance terminates upon the death of either party.  750 ILCS 5/510(c) (West 1994).  We therefore remand this case for redistribution of the entire marital estate, including petitioner's pension.  We note that our review of this case was considerably hampered by the lack of evidence of the actual cash value of the pension and the value of marital personal property.  On remand, in order to achieve a just apportionment, the trial court should require the parties to present evidence of the actual cash value 
of the pension as well as the value of the contents of the marital home.  We now turn to respondent's challenge to the trial court's maintenance award.

C. Maintenance

Respondent raises several issues concerning the trial court's initial maintenance award.  Section 504(a) of the Act permits a trial court to grant maintenance to a dependent former spouse in amounts and for periods of time as the court deems just after considering all the relevant circumstances of the parties.  750 ILCS 5/504(a) (West 1996).  This includes the marital property apportioned to each party.  750 ILCS 5/504(a)(1) (West 1996).  Because we are remanding this case for the redistribution of marital property, the maintenance award also should be reconsidered in light of the new property distribution.  Nonetheless, we feel the need to address some of the issues raised by respondent concerning maintenance.

Respondent argues that the trial court should have awarded  permanent maintenance rather than rehabilitative maintenance.  Given the circumstances of this case, we agree.  A trial court enjoys considerable discretion in granting maintenance; we will not reverse absent an abuse of discretion.  
In re Marriage of Severino
, 298 Ill. App. 3d 224, 226 (1998).  The Act authorizes both permanent and rehabilitative, or time-limited, maintenance awards.  
In re Marriage of Pearson
, 236 Ill. App. 3d 337, 347-48 (1992).  Rehabilitative maintenance is appropriate if evidence shows a potential for future employability at an income that allows approximately the same standard of living established during the marriage.  
Pearson
, 236 Ill. App. 3d at 348.  Rehabilitative maintenance may be granted if the receiving spouse has the present or future ability to become self-

sufficient or the ability to acquire skills that would allow employability at an appropriate income level, but to do so would require some time.  
Pearson
, 236 Ill. App. 3d at 348.

Permanent maintenance is appropriate when the former spouse is unemployable or employable only at a low income in light of the standard of living established during the marriage.  
In re Marriage of Harlow
, 251 Ill. App. 3d 152, 159 (1993).  Permanent maintenance should be the rule and not the exception when the former spouse is disabled to the point where he or she is unable to work; thus, the court should concentrate heavily on the spouse's physical condition in fashioning the award.  
In re Marriage of Chapman
, 285 Ill. App. 3d 377 (1996); see also 
In re Marriage of Stam
, 260 Ill. App. 3d 754 (1994).

Our case resembles both 
Chapman
 and 
Stam
.  In 
Chapman
, the court reversed a denial of permanent maintenance to a former spouse suffering from myotonic dystrophy even though the marriage was of short duration.  
Chapman
, 285 Ill. App. 3d at 384.  The disease was disabling to the point that the former spouse was unable to perform routine daily tasks.  The court found that too much emphasis had been placed on the short duration of the marriage and not enough emphasis on the former spouse's physical condition as it related to her present and future earnings capacity. 
 
Chapman
, 285 Ill. App. 3d at 384.

In 
Stam
, the parties were also married for only a short time.  Following their separation, the former wife was diagnosed with multiple sclerosis, rendering her unable to work.  The former wife was awarded permanent maintenance, reviewable after three years.  At the three-year review, maintenance was extended for another four years, after which another review would be conducted.  
Stam
, 260 Ill. App. 3d at 754-55.  On appeal, the 
Stam
 court affirmed the order extending maintenance.  The court found that, while a former spouse requesting maintenance has an affirmative duty to seek gainful employment, that duty "must be balanced against a realistic appraisal of the likelihood that the spouse will be able to support herself in some reasonable approximation of the standard of living established during the marriage."  
Stam
, 260 Ill. App. 3d at 757.  Because nothing in the record indicated that the former wife would become self-sufficient in the future, the court concluded that it was proper to award what amounted to permanent maintenance.  
Stam
, 260 Ill. App. 3d at 757.

In our case, there is little doubt that the trial court awarded rehabilitative rather than permanent maintenance.  In its written order, the trial court required petitioner to pay the monthly mortgage of $1,500 on the marital residence until it was sold or until June 30, 1999, whichever came first.  Commencing January 1, 1999, the payments would be considered maintenance.  The trial court also ordered petitioner to pay maintenance to respondent in the amount of $125 per week "until sale and closing of the marital home."  Upon the sale of the home, maintenance was subject to modification.  The duration of maintenance was limited because it was subject to termination or substantial modification upon the sale of the marital residence.  Moreover, in rendering its judgment, the trial court stated that it would "require [Thomas] *** to continue making the mortgage payments on this marital residence and to provide [respondent] 
as and for temporary maintenance
 the sum of $125 per week until June 30, 1999, or the sale of the marital residence and closing thereof, whichever comes first."

Respondent's entitlement to permanent maintenance is clear.  There is no doubt from the record that respondent suffers from multiple sclerosis, which renders her unable to be gainfully employed.  Petitioner's ability to pay permanent maintenance is equally clear.  At the time of trial his annual salary was in excess of $90,000 per year.  He had amassed a sizeable 401(k) account.  His children's college educations were provided for through wise investments.  Upon retirement he will have a significant pension.  Petitioner's financial situation juxtaposed to respondent's is staggering.  Moreover, the marriage was of much longer duration than the marriage in either 
Chapman
 or 
Stam
.  We therefore hold that by awarding temporary maintenance the trial court abused its discretion.  We remand this case for reevaluation of the parties' circumstances in light of the new property distribution.  Given respondent's physical condition, we believe that an award of rehabilitative maintenance is inappropriate.

Moreover, in determining the amount of maintenance to grant to respondent, the trial court should keep in mind the 
reasonable needs
 of respondent 
in light of the standard of living
 established during the marriage.  See 
In re Marriage of Tietz
, 238 Ill. App. 3d 965, 972 (1992).  A spouse's poor health warrants a larger amount of maintenance than that awarded to a spouse in good health.  
In re Marriage of Bonneau
, 294 Ill. App. 3d 720, 731 (1998); see also 
In re Marriage of Shields
, 167 Ill. App. 3d 205 (1988)(holding that it was not an abuse of discretion to order wife to pay $180 per month to husband who had suffered a debilitating stroke, even though wife's income was not great and husband was awarded considerable martial assets); 
In re Marriage of Brooks
, 
138 Ill. App. 3d 252, 265-66 (holding that maintenance of $225 per week awarded to severely disabled wife was not an abuse of discretion in spite of considerable marital assets awarded to wife).  The trial court should also consider the payor spouse's financial circumstances in assessing the ability to provide maintenance.  See 
In re Marriage of Hochleutner
, 260 Ill. App. 3d 684, 691 (1994).  

Considering the circumstances of this case we find that the initial amount of maintenance was too low.  We note that because the mortgage payment, which the trial court termed as maintenance between January and June 1999, was to terminate on the sale of the marital residence, we will not consider it part of the maintenance award for purposes of this discussion.  

The trial court awarded respondent maintenance in the amount of $125 per week or approximately $542 per month out of which she is responsible for paying taxes.  She also received $1,044 per month in child support until February 2000.  Respondent has no other source of income and is for all intents and purposes unemployable due to multiple sclerosis.  Moreover, though DORS pays $1,583 per month for a caregiver, that amount does not go directly to respondent.  Thus, respondent's pretax "income" (including child support) is approximately $1,585 per month.  A conservative estimate of respondent's monthly expenses (including those related to the minor child living with her) gleaned from the record is $2,232, leaving a shortfall of over $650.

In stark contrast, petitioner has a monthly net income in excess of $5,200, excluding the tax advantages of paying maintenance.  His monthly expenses including maintenance, child support, and rent for his apartment are $3,993, leaving a surplus of around $1,200.  When his child support obligation ceases this surplus will jump to $2,200.  Given petitioner's job status, it is likely that his income will continue to increase.  Clearly, petitioner is in a superior financial position, both presently and in the future, compared with respondent.

In light of the relative circumstances of the parties, the amount of maintenance set by the trial court was inadequate and amounted to an abuse of discretion.  Given the evidence presented, no reasonable person would believe the amount awarded respondent would be sufficient to meet her reasonable needs let alone allow her to maintain a standard of living anywhere close to that established during the marriage.  We now turn to respondent's challenge to the trial court's denial of contribution to attorney fees.

D. Respondent's Request For Contribution to Attorney Fees

Respondent argues that the trial court erred when it denied her request for contribution to attorney fees and costs pursuant to section 503(j) of the Act (750 ILCS 5/503(j)(West 1996)) and when it ordered her attorney fees to be paid from the proceeds of the sale of the marital residence.  Specifically, respondent asserts that the trial court failed to consider the factors referenced in section 503(j)(2) of the Act (750 ILCS 5/503(j)(2)(West 1996)).  Petitioner counters that respondent has essentially waived the issue because she did not present specific evidence regarding the services performed, the time expended, and the hourly rate charged.  Respondent responds that she was denied the opportunity to present the evidence because the trial court failed to hold a hearing on the petition.  In essence, respondent argues that section 503(j) requires the trial court to hold a separate hearing when a petition for contribution to attorney fees and costs has been filed.

Because section 503(j) of the Act is new, we have little authority to guide us in determining whether a separate hearing is required on a party's petition for contribution to attorney fees and costs.   Therefore, we must resort to statutory interpretation.

It is axiomatic that when interpreting statutes courts must ascertain and give effect to the intent of the legislature.  
In re Marriage of Takata
, 304 Ill. App. 3d 85, 94 (1999).  The best indicator of legislative intent is typically the plain and ordinary meaning of the language of the statute.  
Takata
, 304 Ill. App. 3d at 94.  Also, in discerning legislative intent, every part of the statute must be considered together and every word or phrase should be given some reasonable meaning within the context of the statute.  
Takata
, 304 Ill. App. 3d at 94.  When the statutory language is clear and unambiguous, there is no need to turn to other tools of statutory construction.  
In re Marriage of Mitchell
, 181 Ill. 2d 169, 173 (1998).  Applying these principles, we turn to the relevant language of the Act.

Prior to June 1, 1997, petitions for contribution to attorney fees and costs and final fee petitions in dissolution cases were governed exclusively by section 508 of the Act (750 ILCS 5/508 (West 1994)).  Effective June 1, 1997, the legislature amended the Act by substantially changing section 508 and adding section 503(j) (1997 amendments).  See Pub. Act. 89--712, §5, eff. June 1, 1997.  The former section 508(a) provided:

"The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred *** [by the opposing party]."  750 ILCS 5/508(a) (West 1994).

As amended, section 508(a) of the Act now states in part:

"The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. ***  
At the conclusion of the case, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503
." (Emphasis added.)  750 ILCS 5/508(a) (West 1996).

As a companion to the amended section 508(a), section 503(j) of the Act provides:

"After proofs have been closed in the final hearing on all other issues between the parties *** and before judgment is entered, a party's petition for contribution to fees and costs incurred in the proceeding 
shall be heard and decided
, in accordance with the following provisions:

(1) A petition for contribution, if not filed before the final hearing on other issues between the parties, shall be filed no later than 30 days after the closing of proofs in the final hearing or within such other period as the court orders.

(2) Any award of contribution to one party from the other party shall be based on the criteria for division of marital property under this Section 503 and, if maintenance has been awarded, on the criteria for an award of maintenance under Section 504.

(3) The filing of a petition for contribution shall not be deemed to constitute a waiver of the attorney-client privilege between the petitioning party and current or former counsel; and such a waiver shall not constitute 
a prerequisite to a hearing for contribution
.  If either party's presentation on contribution, however, includes evidence within the scope of the attorney-client privilege, the disclosure or disclosures shall be narrowly construed and shall not be deemed by the court to constitute a general waiver of the privilege as to matters beyond the scope of the presentation.

(4) No finding on which a contribution award is based or denied shall be asserted against counsel or former counsel for purposes of any hearing under subsection (c) or (e) of section 508."  (Emphasis added.)  750 ILCS 5/503(j) (West 1996).  

Only one court has addressed the 1997 amendments.  It read the language of the amendments as "alter[ing] the procedures by which issues regarding attorney fees are presented and heard in dissolution cases."  
In re Marriage of McGuire
, 305 Ill. App. 3d 474, 478 (1999).  The 
McGuire
 court determined that the legislature intended final fee petitions to continue to be governed by the provisions of section 508, but petitions for contribution are to be governed by the provisions of section 503(j).  
McGuire
, 305 Ill. App. 3d at 478.  Consequently, the court found petitions for contribution and petitions for approval of final fees 
should be considered in separate and distinct proceedings.  
McGuire
, 305 Ill. App. 3d at 477.  According to the 
McGuire
 court, one purpose of the amendments "was to reduce the potential for conflicts of interest between attorneys and their clients and for infringement upon the attorney-client privilege in cases where attorney fees became an issue."  
McGuire
, 305 Ill. App. 3d at 477.

We agree with 
McGuire
 in essence.  Unless the context of a statute indicates otherwise, the word "shall" contained in the statute connotes a mandatory obligation.  
Takata
, 304 Ill. App. 3d at 95.  Thus, the plain and ordinary meaning of the section 503(j) of the Act is that the trial court 
must
 hear and decide a party's petition for contribution to attorney fees and costs after the close of proofs on all other issues.  The context of the language does not indicate otherwise.  

We, however, temper our agreement with 
McGuire
 by cautioning against too literal a reading of section 503(j).  We do not read section 503(j) as requiring an additional hearing, which would further burden already overburdened trial courts, but, rather, as requiring a trial court to hear, through testimony or otherwise, additional proofs when a petition for contribution is filed in accordance with section 503(j) in the context of preexisting proceedings.  If the trial court wishes to hold a separate and distinct hearing on the petition, it has the discretion to do so. 

Here, the record contains no indication that the trial court made a separate ruling on respondent's petition for contribution.  There is no indication in the record that evidence was presented, either at a separate hearing or during any of the proceedings in this matter, regarding the amount of attorney fees owed by respondent.  Nor was evidence presented either at a separate hearing or during any of the proceedings in this matter as to the amount of attorney fees owed by petitioner, though such evidence clearly would be relevant.  As a result, on remand the trial court should take evidence and rule on respondent's petition for contribution as mandated by section 503(j) of the Act.  Because the trial court will be reconsidering the issue of attorney fees in light of the evidence presented on respondent's petition for contribution, we see no need to address her contention that error was committed by requiring attorney fees to be paid out of the proceeds from the sale of the marital residence.

IV. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of McHenry County is reversed.  The cause is remanded with directions for proceedings consistent with this decision.

Reversed and remanded with directions.

GEIGER and THOMAS, JJ., concur.