# Illinois Official Reports

## Appellate Court

---

*People ex rel. Department of Transportation v. Greatbanc Trust Co.*,
**2018 IL App (1st) 171315**

---

Appellate Court
Caption

THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellee, v. GREATBANC TRUST COMPANY, f/k/a First National Bank in Chicago Heights, as Trustee Under Trust Agreement Dated October 8, 1973, and Known as Trust Number 996; BENEFICIARY OR BENEFICIARIES OF A TRUST AGREEMENT DATED OCTOBER 8, 1973, AND KNOWN AS TRUST NUMBER 996, With Greatbanc Trust Company, f/k/a First National Bank in Chicago Heights, as Trustee, Whose Names Are Unknown and Are Designated Unknown Owners; GREATBANC TRUST COMPANY, f/k/a First National Bank in Chicago Heights, as Trustee Under a Trust Agreement Dated December 4, 1970, and Known as Trust Number 1447; BENEFICIARY OR BENEFICIARIES OF A TRUST AGREEMENT DATED DECEMBER 4, 1970, AND KNOWN AS TRUST NUMBER 1447, With Greatbanc Trust Company, f/k/a First National Bank in Chicago Heights as Trustee, Whose Names are Unknown and Are Designated Unknown Owners; PETER KATTOS; MARQUETTE BANK a/k/a Marquette; and UNKNOWN OWNERS, Defendants (Greatbanc Trust Company, f/k/a First National Bank in Chicago Heights, as Trustee under Trust Agreement Dated October 8, 1973, and Known as Trust Number 996, Peter Kattos, and Marquette Bank a/k/a Marquette, Defendants-Appellants).

District & No.

First District, Second Division
Docket No. 1-17-1315

Filed

December 4, 2018

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-L-050813; the Hon. Alexander P. White, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Figliulo & Silverman, PC (Carl A. Gigante and Rebecca K. Fournier, of counsel), and Kelly, Oldon, Michod, DeHaan & Richter, LLC (Marc J. Chalfen, David S. Adduce, and Paul J. Richter, of counsel), both of Chicago, for appellants.<br><br>Walker Wilcox Matousek, LLP, of Chicago (Amanda Ripp, of counsel), for appellee. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion.<br>Presiding Justice Mason and Justice Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1    In this eminent domain matter, defendants Greatbanc Trust Company, as trustee under Trust Agreement dated October 8, 1973, and known as Trust Number 996 (Greatbanc 1973), and Marquette Bank, a/k/a Marquette (Marquette), filed notices of appeal from the trial court's grant of plaintiff Department of Transportation of the State of Illinois (IDOT)'s motions *in limine* with respect to defendant Peter Kattos's valuation expert and the trial court's grant of summary judgment in favor of IDOT on the issue of just compensation. For the reasons that follow, we affirm.

¶ 2                              I. BACKGROUND

¶ 3    Before getting into the background of this appeal, we note that, on appeal, Kattos, not Greatbanc 1973, filed an appellant's brief. Marquette joined in the arguments raised in that brief. Kattos, however, did not file a notice of appeal in the trial court. Rather, notices of appeal were filed on behalf of only Greatbanc 1973 and Marquette. It appears that this inconsistency arises out of the sloppy filing of attorney appearances in the trial court on behalf of Kattos and Greatbanc 1973. Initially, an appearance by the firm of Neal & Leroy was filed on behalf of Kattos. No appearance was filed on behalf of Greatbanc 1973. Later, Neal & Leroy filed a motion to substitute counsel. In that motion, Neal & Leroy stated that attorney Thomas Goedert, as a member of Neal & Leroy, had been representing Ashton Drive, LLC, Petey's Two Real Estate, LLC, and Kattos. (Ashton Drive, LLC, and Petey's

Two Real Estate, LLC, were not named parties to the present case, but apparently were the beneficiaries of the two trusts for which Greatbanc Trust Company was named in its capacity as trustee.) Because Goedert was leaving Neal & Leroy, the firm sought to withdraw its representation of these parties and requested that Goedert be allowed to file his individual appearance on behalf of those parties. That motion was granted. Thereafter, Goedert filed an appearance on behalf of Ashton Drive, LLC, and Petey's Two Real Estate, LLC. He did not file an appearance on behalf of either Kattos or Greatbanc 1973, although he continued to file documents on behalf of Kattos and signed the notice of appeal on behalf of Greatbanc 1973. Appellate counsel (not Goedert) then filed an appellant's brief on behalf of Kattos.

¶ 4    It appears, from what we can gather from this confusing record, that Goedert intended to represent all of the named defendants except Marquette, which had separate counsel. Under different circumstances, this lack of attention to detail could present serious issues regarding who might be entitled to relief on appeal. However, because we affirm the trial court's decisions on a basis that applies equally to all named defendants, we need not sort out the mess that is the representation of the defendants other than Marquette. In an attempt to minimize confusion in this decision, we will use the term "appellants" to refer to Greatbanc 1973, Kattos, and Marquette, all of whom, in some fashion, claim an interest in this appeal.

¶ 5    Turning now to the facts of this case, in August 2006, IDOT filed a complaint to condemn a portion of real property in which the named defendants had either an ownership or beneficial interest[1] (subject property) for use in a road improvement project. The subject property was located at the intersection of U.S. Route 6 and U.S. Route 45 in Orland Park and totaled approximately 40 acres. Although the majority of the subject property was vacant, a portion of it was improved with a restaurant operated by Kattos. Initially, IDOT sought to take fee simple title in a total of 5.258 acres of the subject property (3.238 acres of which was already dedicated or used for highway purposes) and temporary easements over an additional 0.322 acres of the subject property. One of the parcels in which IDOT sought fee simple title included part of the existing restaurant, requiring the restaurant to be either demolished or remodeled. In 2008, after Kattos refused to demolish the restaurant, IDOT reduced the size of the property it sought to condemn, such that it no longer included any part of the restaurant.

¶ 6    After what appears to be eight years of fact and expert discovery, in March 2016, IDOT filed two motions *in limine* directed toward the opinions of Kattos's valuation expert, Joseph Thouvenell. In the first motion *in limine*, IDOT argued that Thouvenell should be barred from testifying at trial because his opinions on the value of the subject property, the property taken, and the remainder were based on improper appraisal methods. In the second motion *in limine*, IDOT argued that certain comparable sales Thouvenell used in his valuation opinions were inadmissible.

¶ 7    The trial court set a briefing schedule on the motions *in limine* and set a hearing date for May 25, 2016. Appellants did not file a response. At the scheduled hearing, the trial court

---

[1]Again, the record is not clear on the precise relationship of the named defendants to the subject property. Although not specifically stated anywhere, it appears, based on information gathered in the record and from statements in the parties' appellate briefs, that the two trusts for which Greatbanc Trust Company is the trustee were the record owners of the two parcels that comprised the subject property. The beneficiaries of those trusts were two unnamed LLCs owned by Kattos.

granted appellants an extension of time in which to respond to the motions *in limine*. Thereafter, over the course of the next nine months, the trial court granted appellants another five extensions of time in which to respond to IDOT's motions *in limine*. In the final extension order, entered February 28, 2017, the trial court granted appellants until March 13, 2017, to respond to the motions *in limine* and set a hearing on the motions for April 4, 2017. On March 30, 2017, after appellants had again failed to file any response to IDOT's motions *in limine*, the trial court entered an order granting the motions. In that order, the trial court recounted in detail IDOT's arguments in its motions *in limine*. After noting that appellants failed to file any response to the motions and that it would therefore consider the motions unopposed, the trial court stated that it agreed with IDOT's contentions in both motions *in limine*. Therefore, the trial court granted both motions in their entirety.

¶ 8        On April 4, 2017, the date set for the hearing on the motions *in limine*, the trial court entered an order, denying appellants' motion for another extension of time to respond to the motions *in limine* and to reset the trial date. The order also noted that IDOT would be filing a motion for summary judgment the following day and ordered appellants to respond to that motion for summary judgment by April 12, 2017. The trial court set a hearing on the motion for summary judgment for April 18, 2017.

¶ 9        In the motion for summary judgment filed the following day, IDOT sought summary judgment on the amount of final just compensation for the property taken. IDOT argued that because the trial court had granted IDOT's motions *in limine* regarding Thouvenell's opinions, the only valuation evidence was the opinions of IDOT's appraisers, who opined that the total just compensation for the taking fell somewhere in the range of $1.378 million to $1.52 million. IDOT stated that it would stipulate, only for purposes of the motion for summary judgment, that just compensation was $1.52 million.

¶ 10       By the time of the hearing on the motion for summary judgment, appellants had again failed to file any response, and the trial court granted IDOT's motion for summary judgment. Thereafter, on April 27, 2017, the trial court entered its final judgment order, setting just compensation for the taking at $1.52 million and confirming its previous orders granting IDOT title and/or temporary easements in the taken property. In addition, the trial court explicitly stated that there was no just reason to delay either enforcement or appeal of the order. Thereafter, Greatbanc 1973 and Marquette filed their respective notices of appeal.

¶ 11                              II. ANALYSIS

¶ 12       On appeal, appellants argue that the trial court erred in granting IDOT's motions *in limine* and, in turn, IDOT's motion for summary judgment. More specifically, they argue that any errors in Thouvenell's appraisal methods went to the weight of his opinions, not their admissibility, and that the comparable sales that Thouvenell utilized were proper. In addition, they argued that even if the trial court properly granted IDOT's motions *in limine*, the motions *in limine* did not challenge Thouvenell's opinion of the value of the part taken or Thouvenell's use of comparable sale 5A and, thus, that evidence should have been considered in assessing whether summary judgment should be granted. In response, IDOT argued, among other things, that appellants waived their contentions on appeal by failing to raise any of them in the trial court. We agree.

¶ 13       It is a well-established principle of appellate practice that contentions not raised in the trial court are waived and may not be raised for the first time on appeal. See, *e.g.*, *Haudrich*

- 4 -

*v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996); *Moore v. Board of Education of the City of Chicago*, 2016 IL App (1st) 133148, ¶ 35 (refusing to consider issue not raised at any point in trial court). The purpose of this and other waiver rules is to preserve judicial resources by requiring parties to bring issues to the trial court's attention, thereby allowing the trial court an opportunity to correct any errors. *People v. McKay*, 282 Ill. App. 3d 108, 111 (1996). In other words, "[a] party cannot stand idly by and not object, and then appeal, arguing that the trial court's action was wrong." *Mohica v. Cvejin*, 2013 IL App (1st) 111695, ¶ 85. A party's failure to first raise an issue or theory in the trial court "weaken[s] the adversarial process and our system of appellate jurisdiction" and prejudices the opposing party by depriving that party of the opportunity to respond to the issue or theory with its own evidence and argument. *Daniels v. Anderson*, 162 Ill. 2d 47, 59 (1994).

¶ 14      Here, despite being granted six extensions of time and nearly a year in which to respond, none of the appellants (or other named defendants) filed a written response to IDOT's motions *in limine* or a motion to reconsider the grant of the motions *in limine*. In addition, appellants did not include in the record on appeal any reports of proceedings related to the motions *in limine*. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant."). Therefore, based on the record, appellants made no effort whatsoever to respond or object to IDOT's motions *in limine*, despite the fact that they were given many opportunities to do so.

¶ 15      Likewise, despite having failed to take advantage of the trial court's generosity in granting numerous extensions on the motions *in limine*, Kattos and Marquette continued to be derelict and made no attempt to respond to IDOT's motion for summary judgment or to seek an extension of time in which to respond. They also, again, did not include any report of proceeding in the record, demonstrating that they registered any oral objections to IDOT's motion for summary judgment. Based on this complete and utter lack of effort to present their arguments and objections in the trial court, application of the waiver rule to appellants' contentions on appeal is clear.

¶ 16      Appellants attempt to avoid the application of the waiver rule in a couple of ways. First, they argue that their failure to file a written response to the motions *in limine* did not waive their opposition to the motions, per Cook County Circuit Court Rule 2.1(d) (Aug. 21, 2000). Rule 2.1(d) outlines the procedure for filing motions in the Law Division of the Circuit Court and sets a standard briefing schedule for motions. *Id.* It then provides in relevant part: "Failure to file a supporting or answering memorandum shall not be deemed to be a waiver of the motion, or a withdrawal of the opposition thereto, but shall be deemed to be a waiver of the right to file the respective memorandum." *Id.*

¶ 17      Appellants argue that because their failure to file a written response to the motions *in limine* did not waive their objections to the motions, the trial court erred in granting the motions *in limine* by default and in denying them the opportunity to orally object to the motions at the scheduled hearing. We note that appellants' argument in this respect focuses primarily on the issue of whether they waived their contentions in the trial court and whether the trial court erred in ruling on the motions *in limine* without input from appellants; it does

not directly address whether they waived their contentions on appeal. Nevertheless, because this argument implies that appellants were improperly deprived of the opportunity to raise their contentions in the trial court, we address it to the extent that it affects waiver on appeal.

¶ 18  As an initial matter, we disagree that the trial court granted the motions *in limine* by default. Although the trial court noted in its written decision that the motions *in limine* were unopposed, it also affirmatively stated that it agreed with the merits of IDOT's in the motions. Thus, on our review, it appears that the trial court granted the motions *in limine* based on their merits, not based on appellants' failure to file written responses.

¶ 19  We also reject appellants' contention that by ruling on the motions *in limine* prior to the scheduled hearing date, the trial court denied them the opportunity to orally object. Not only was the trial court not obligated to provide an opportunity for oral arguments on such motions (*Korbelik v. Staschke*, 232 Ill. App. 3d 114, 118-19 (1992) (oral arguments in a case tried without a jury are a privilege, not a right)), but also, as mentioned, appellants failed to include in the record on appeal a report of proceeding for the scheduled hearing date of April 4, 2017. As a result, we have no way to ascertain whether appellants objected to the motions *in limine* or the trial court's issuance of a decision on the motions prior to the hearing. We are also unable to ascertain whether the trial court indicated a willingness to revisit the merits of the motions *in limine* or addressed its issuance of a written order prior to the scheduled hearing. We also note that the order entered following the April 4, 2017, hearing indicated that the only request made by defendants was that they be given *another* extension of time in which to file a written response to the motions *in limine*. Given all of this, the fact that it was appellants' burden to present us with a sufficient record on which to review the claimed errors, and that all inadequacies in the record must be construed against the appellants, we see no basis to conclude that the trial court wrongfully deprived appellants of the opportunity to orally object to the motions *in limine*.

¶ 20  Putting those initial matters aside, we conclude that Rule 2.1(d) has no effect on our determination that appellants have waived their contentions on appeal. Rule 2.1(d) speaks to the waiver effect of the failure to file a written response to a motion *in the trial court*. See Cook County Cir. Ct. R. 2.1(d) (Aug. 21, 2000). We are not the trial court, nor is our conclusion that appellants waived their contentions based merely on their failure to file written responses to IDOT's motions *in limine* and for summary judgment. Instead, we have applied the well-known *appellate* rule that the failure to raise issues in the trial court results in waiver of those issues *on appeal* to conclude that appellants' complete and utter failure to register any objections to IDOT's motions—whether orally or in writing—waived their contentions on appeal. Even if Rule 2.1(d) had some application in the appellate context, it addresses only the failure to file a written response. Appellants do not explain how it has any effect on the waiver that results from their failure to demonstrate that they registered oral objections or their failure to file motions to reconsider the trial court's alleged errors.

¶ 21  In support of their contention that Rule 2.1(d) is relevant to determining whether contentions on appeal have been waived, appellants cite *Parkway Bank & Trust Co. v. Meseljevic*, 406 Ill. App. 3d 435 (2010). In that case, the defendant filed an untimely response to the plaintiff's motion for judgment on the pleadings (it was filed one day late), despite the trial court's warning that the failure to file a timely written response would result in waiver of oral argument on the motion. *Id.* at 438. The trial court struck the untimely response and barred the defendant from presenting oral argument on the motion. *Id.* On

appeal, the plaintiff argued that the defendant waived any objection to the trial court's grant of judgment on the pleadings by failing to object in the trial court. *Id.* at 442-43. Noting that Rule 2.1(d) provided that the failure to file a written response only waived the right to file the response, not the party's objection, the appellate court concluded that the defendant had not failed to object, but only that its objection was stricken as untimely. *Id.* at 443. The court also observed that, in addition to objecting in writing, albeit untimely, the defendant also appeared at the hearing on the motion, ready to object, despite its oral objection having been barred. *Id.* at 443-44. Thus, the court concluded that application of the waiver rule was inappropriate because the defendant had clearly made every attempt to object. *Id.* at 444.

¶ 22       *Parkway Bank* is inapposite to the present case. The defendant in that case made every effort to object to the motion for judgment on the pleadings, both in writing and orally, and its only fault was failing to file its written response on time. In the present case, based on the record before us, appellants made no effort whatsoever to object, in any manner, to IDOT's motions *in limine* and motion for summary judgment. Rather, they did exactly what the waiver rule was designed to prevent—they sat idly by for nearly a year, filed nothing, argued nothing, and now attempt to argue that the trial court erred.

¶ 23       Despite this, appellants argue that their intent to object was evidenced by their numerous requests for extension of time to respond to IDOT's motions. Whatever their intent might have been, the fact remains that appellants never filed any written response to the motions *in limine*, despite being given six extensions of time and nearly a year in which to do so. Nor did they file a written response to the motion for summary judgment or even request an extension of time in which to respond. There also is no evidence in the record of any attempt to orally object at the hearings on the motions. Under these circumstances, what appellants may or may not have intended to do is irrelevant. Waiver results from the failure to raise an issue in the trial court, not the lack of intention to raise the issue in the trial court.

¶ 24       Appellants also argue that we should overlook waiver in the interests of justice. They argue that because there exists a constitutional right to just compensation in eminent domain cases and because the difference between Thouvenell's valuation and what was awarded was over $1.5 million, if IDOT's expert undervalued the subject property, then the trial court's alleged errors prejudiced Kattos and Marquette and violated their constitutional rights.

¶ 25       Although it is true that "[i]n exceptional cases, we may refuse to apply waiver in the interests of justice" (*In re Marriage of Brackett*, 309 Ill. App. 3d 329, 338 (1999)), we see nothing exceptional about this case to warrant putting aside waiver, especially given appellants' blatant disregard of the trial court's response deadlines. The fact that constitutional rights are involved does not alter our opinion. It is well established that waiver applies equally in cases involving constitutional rights and constitutional claims on appeal. See, *e.g.*, *Cholipski v. Bovis Lend Lease, Inc.*, 2014 IL App (1st) 132842, ¶ 58; *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 127 (2010). In addition, if we were to overlook waiver in every case where the appealing party might be prejudiced, the waiver rule would essentially disappear, as every appellant claims that it was prejudiced by the trial court's decisions. Moreover, appellants have not pointed to anything that would cause us to conclude that application of the waiver rule would result in an exceptional injustice. The fact of the matter is that, at the end of the day, the trial court did award compensation for the taking of the property. Although the $1.52 million awarded is less than the compensation Thouvenell suggested, the compensation awarded by the trial court was based on a valuation prepared by

an expert whose credentials and methods appellants have not challenged. Accordingly, we disagree that the present case is one of those exceptional cases in which waiver should be overlooked in the interests of justice. As our supreme court has noted, "[W]hile our case law is permeated with the proposition that waiver and forfeiture are limitations on the parties and not on the court, that principle is not and should not be a catchall that confers upon reviewing courts unfettered authority to consider forfeited issues at will." *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 33.

¶ 26 We observe that the conclusion that an appellant has waived all of his or her contentions on appeal may initially appear to be harsh. This is likely due to the fact that it is not a common occurrence to see such a blatant example of waiver as is present in this case; it is not often that a party repeatedly and completely fails to object to pivotal motions in the trial court. It is also this blatant disregard, however, that warrants the application of the waiver rule in this case. Despite being given every opportunity to respond to IDOT's motions *in limine* and motion for summary judgment, appellants repeatedly failed to take advantage of those opportunities. Recall, the trial court granted appellants a total of six extensions of time in which to file their written responses to the motions *in limine*, which gave appellants a total of one year in which to respond. Moreover, despite having lost their opportunity to respond to the motions *in limine* just a couple of weeks before, appellants completely disregarded their opportunity to file a written response to IDOT's motion for summary judgment. Their failure to respond to the motion for summary judgment cannot be attributed to a sense of futility following the trial court's decision on the motions *in limine* because appellants argue that the motion for summary judgment should have been denied even if the motions *in limine* were properly granted. Further, appellants never filed any sort of motion to reconsider either of those decisions, and they have pointed to nothing in the record evidencing any attempt to register oral objections to these motions.

¶ 27 We can think of few circumstances that would better illustrate the purpose of and need for the waiver rule than the circumstances of this case. IDOT and the trial court undoubtedly spent a significant amount of time and effort on briefing, arguing, reading, researching, and deciding the motions *in limine* and motion for summary judgment. It would be a great waste of those judicial resources and supremely unfair for us to undo all of that work at appellants' request after they literally did nothing to object to the motions for over a year. Although we recognize that it is not a common occurrence that a party waives its entire case on appeal, we think it appropriate, necessary, and in the interests of justice to strictly apply the rule in this case.

¶ 28                                    III. CONCLUSION
¶ 29 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 30 Affirmed.